**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **C.R. and K.R.**

**No. 22-0189** (Greenbrier County 21-JA-04 and 21-JA-05)

**MEMORANDUM DECISION**

Petitioner Mother K.H., by counsel Denise N. Pettijohn, appeals the Circuit Court of Greenbrier County's February 11, 2022, order terminating her parental rights to C.R. and K.R.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Patrick Morrisey and Brittany Ryers-Hindbaugh, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Michael R. Whitt, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner raises several assignments of error surrounding the termination of her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In January of 2021, the DHHR filed a child abuse and neglect petition against petitioner and the father on the basis of substance abuse. Specifically, the DHHR alleged that petitioner abused drugs, including methamphetamine, during her pregnancy with C.R. and tested positive for opiates upon her admittance to the hospital to give birth to the child. Approximately four days after the child's birth, hospital staff contacted Child Protective Services ("CPS") after the child sustained a skull fracture. According to hospital staff, petitioner claimed that she "stumbled and fell against the crib and hit the baby's head." The DHHR further alleged that petitioner left K.R. with a grandmother for long periods of time and failed to provide any support for her. Petitioner waived her preliminary hearing.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

The circuit court held an adjudicatory hearing in March of 2021. Petitioner's counsel advised the circuit court that petitioner did not contest adjudication and was willing to stipulate that the children were abused and neglected due to her substance abuse. The circuit court advised petitioner of her right to contest adjudication and questioned her to ascertain whether her stipulation was given knowingly and voluntarily. Ultimately, the circuit court accepted petitioner's stipulation and adjudicated her as an abusing parent.

In April of 2021, the circuit court held a hearing on petitioner's motion for a post-adjudicatory improvement period. Petitioner represented that she would fully comply with services, and the circuit court granted her an improvement period. The terms and conditions of the improvement period required that petitioner (1) address her drug abuse problems by following all the recommendations of her psychological and substance abuse evaluation, (2) participate in random drug screens, (3) participate in parenting and adult life skills classes, (4) participate in visits with the children, (5) obtain and maintain suitable housing, (6) obtain and maintain financial stability, (7) participate in all multidisciplinary team ("MDT") meetings, and (8) maintain contact with the DHHR, among others.

The circuit court held a dispositional hearing in November of 2021. A CPS worker testified that petitioner was unemployed and that petitioner had not advised her that she had obtained suitable housing. The CPS worker stated that petitioner had undergone a psychological evaluation, which recommended that petitioner attend an intensive outpatient substance abuse treatment program. However, according to the worker, petitioner failed to seek any drug treatment. While petitioner had informed the worker that she was attending counseling, the worker noted that petitioner failed to provide any documentation to support her claim. The worker further testified that petitioner had missed twenty-four scheduled drug screens and had not submitted a single screen since April of 2021. Lastly, the worker testified that petitioner had not attended all MDT meetings and was not truthful with the MDT members.

A former service provider testified that petitioner was not consistent in attending parenting and adult life skills classes and that she had not attended the classes since July of 2021. During the occasions petitioner attended the classes, she did not interact with the provider. Further, petitioner refused to meet with the provider without the father present, despite the fact that he was aggressive and disruptive during the classes. The provider also stated that she requested that petitioner submit to drug screens, but petitioner refused. A second service provider testified that she attempted to re-initiate services with petitioner in August of 2021. However, after an initial meeting, petitioner refused further services from the second provider. A third service provider testified that he provided petitioner with supervised visitation and that petitioner attended approximately half of the scheduled visits. The third provider also testified that petitioner frequently did not confirm visits the day before they were scheduled, which would lead to the visit being cancelled. The third provider stated that he attempted to drug screen petitioner on three different occasions, but she refused.

Petitioner testified that she did not stand by her stipulated adjudication. Petitioner claimed that "what they were saying at the hospital was a lie" and that she did not have opiates in her system upon admission. Petitioner denied that she abused or neglected the children. Petitioner also testified that she complied with services. Petitioner stated that she completed all her parenting and

adult life skills classes. Petitioner admitted that she had not submitted to drug screens but claimed that a service provider had asked her on only one occasion. She further stated that "the hospital lied to me so why do I want to go and take tests for people that can lie some more about me." When asked whether petitioner would test negative for drugs if she screened that day, she stated "[h]onestly, you want to know the truth, I don't know. Yesterday was a bad day for me." As petitioner continued to testify, it was apparent that there had been a breakdown of the relationship between petitioner and her counsel. As such, upon the request of petitioner, the circuit court appointed new counsel and continued the hearing.

In February of 2022, the circuit court reconvened the dispositional hearing. Petitioner testified that no one had asked her to sign a release to obtain documentation from her counselor or medically assisted treatment program. Petitioner stated that she continued to participate in both counseling and treatment. However, petitioner admitted that she had not participated in parenting and adult life skills classes or drug screens since the prior hearing.

A CPS worker testified that she had not requested records from petitioner's medically assisted treatment program or her counselor, nor did she ask petitioner to sign a release form. The CPS worker admitted that she had no evidence that petitioner was not participating in either service. However, the CPS worker testified that petitioner did not have permission to drug screen solely through her medically assisted treatment program, that she had been directed to submit to drug screens through the local day report center, and that she had failed to do so.

Following testimony, the circuit court found that, despite petitioner's testimony that she was participating in a medically assisted treatment program, she failed to provide any proof of her participation in treatment or counseling as recommended in her psychological evaluation report. The circuit court further found that petitioner failed to participate in drug screening, parenting and adult life skills classes, and supervised visitation with the children. Specifically, the court found that petitioner only participated in half of her visits with the children and only participated in parenting and adult life skills classes from June 25, 2021, through July 22, 2021, and once on September 15, 2021. The circuit court also found that petitioner failed to demonstrate that she had secured suitable housing or employment. The circuit court found that petitioner demonstrated an unwillingness or an inability to comply with services and had not responded to or followed through with rehabilitative efforts designed to prevent the abuse and neglect of the children. Accordingly, the circuit court terminated petitioner's parental rights upon finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the children's welfare. Petitioner appeals the circuit court's February 11, 2022, dispositional order.[2]

The Court has previously established the following standard of review in cases such as this:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the

---

[2]The father's parental rights were also terminated during the proceedings below. The permanency plan for the children is adoption by the paternal grandmother.

evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner raises several assignments of error surrounding the termination of her parental rights. First, petitioner argues that the circuit court erred in terminating her parental rights when she was participating in her improvement period. According to petitioner, she participated in her psychological evaluation and parenting courses. Further, she testified that she was attending outpatient drug treatment and counseling, and no evidence to the contrary was presented. Petitioner also maintains that while she did not have employment, testimony demonstrated that she was "still post-partum and had limited ability to work during the period when she did not have employment." As such, while she "had not completed all the terms and conditions of her improvement period, she was complying with several terms and conditions," and, therefore, the circuit court erred in terminating her parental rights. Second, petitioner argues that the circuit court erred in terminating her parental rights rather than employing a less restrictive alternative disposition. Petitioner avers that because the children were placed with the paternal grandmother, the circuit court should have considered a less restrictive alternative to the termination of her parental rights. Petitioner also notes that she demonstrated a bond with the children and was able to appropriately parent them during visits. We disagree and find that she is entitled to no relief.

West Virginia Code § 49-4-604(c)(6) provides that circuit courts are to terminate parental, custodial, and guardianship rights upon finding that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(d)(3) provides that a circuit court may find that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected when the abusing parent has

not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

Here, petitioner failed to respond to or follow through with rehabilitative efforts designed to reduce or prevent the abuse or neglect of the children. While petitioner claims that she was participating in her improvement period and attended services such as parenting and adult life skills classes and supervised visitation, the record does not support these assertions. Testimony established that petitioner attended parenting and adult life skills classes for a month and attended

4

only half of her scheduled supervised visits with the children. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citations omitted). Further, petitioner failed to address her drug addiction. The DHHR presented evidence that petitioner failed to consistently comply with random drug screens. While petitioner claims that she was attending outpatient drug treatment, she provided no evidence in support of this self-serving assertion, and the circuit court assessed the weight of her testimony accordingly. We decline to disturb any credibility determinations made by the circuit court here. *See Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). Petitioner also failed to obtain employment or provide proof of suitable housing. Perhaps most importantly, petitioner failed to acknowledge the extent of her actions. Despite overwhelming evidence of petitioner's drug abuse and her failure to adequately participate in her improvement period, petitioner testified that she was a "great mom" and did not need to make any improvements in her parenting. This Court has previously held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). This abovementioned evidence is sufficient to support a finding that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination was necessary for the children's welfare.

While petitioner argues that the circuit court could have employed a less restrictive alternative to the termination of her parental rights, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Given the foregoing, we find no error in the circuit court's decision to terminate petitioner's parental rights to the children.

Next, petitioner argues that the circuit court erred in terminating her parental rights when she had repeatedly attempted to rescind her stipulated adjudication. According to petitioner, "it was obvious she wished to revoke her stipulation, was confused by the process of stipulating at the adjudicatory hearing and had wished to have the opportunity to contest the allegations in the

petition." Petitioner cites to case law wherein defendants have sought to withdraw their guilty pleas and claims the "standard [in abuse and neglect proceedings] should be no less." Petitioner avers that she "could have shown fair and just reasons to withdraw her stipulation and request a contested adjudicatory hearing" and claims that there were procedural errors in her stipulation and that she was obviously confused. Petitioner concludes that, given the apparent flaws with her stipulation, the circuit court erred in terminating her parental rights.

The Court finds no error in regard to the circuit court's refusal to allow petitioner to withdraw her stipulated adjudication because the requirements of Rule 26 of the Rules of Procedure for Child Abuse and Neglect Proceedings were satisfied. We note that there is no prescribed manner in which a circuit court must question a respondent parent who intends to stipulate at adjudication. Rule 26(a) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings requires that any stipulated or uncontested adjudication include (1) the agreed upon facts supporting court involvement concerning the subject parent's problems, conduct, or condition, and (2) a statement of the subject parent's problems or deficiencies to be addressed at the final disposition. Before the circuit court can accept a stipulated or uncontested adjudication, Rule 26(b) requires the circuit court first determine that the subject parent understands the content and consequences of his or her stipulations and is making the stipulations voluntarily.

Here, the circuit court informed petitioner of her right to a contested adjudication and of the consequences of stipulating to abusing and neglecting the children. Then, the circuit court questioned petitioner regarding her desire to proceed with the stipulation, and petitioner affirmatively responded that she desired to proceed. Petitioner also affirmed that she was specifically admitting to abusing and neglecting the children due to her substance abuse issues. Despite the circuit court's multiple questions regarding the consequences of her stipulation, petitioner ultimately chose to enter the stipulation. Now, on appeal, petitioner does not claim that she was defrauded or forced into stipulating, but simply claims that it was "obvious" that she was confused. However, petitioner fails to cite to individual instances in the record demonstrating that she did not knowingly enter the stipulation and, rather, cites generally to sixty pages of the record. Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires that "[t]he brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on . . . . *[t]he argument must contain appropriate and specific citations to the record on appeal.*" (Emphasis added). As we have repeatedly reminded litigants, "[a] skeletal 'argument,' really nothing more than an assertion, does not preserve a claim . . . . Judges are not like pigs, hunting for truffles buried in briefs." *State v. Kaufman*, 227 W. Va. 537, 555 n.39, 711 S.E.2d 607, 625 n.39 (2011) (citation omitted). Accordingly, because petitioner's stipulation was procedurally sufficient and because she fails to demonstrate any instance of fraud or force in giving her stipulation, we find that petitioner is entitled to no relief in this regard.

Lastly, petitioner argues that the circuit court erred in terminating her parental rights when she complained of ineffective assistance of counsel. Petitioner states that she repeatedly complained to the circuit court regarding the assistance of her counsel and testified as to "her confusion regarding her stipulation, her desire for a hearing on the allegations contained in the [p]etition, and her dissatisfaction with her attorney." While the circuit court granted her new counsel, petitioner claims that the circuit court should have granted her a new adjudicatory hearing

6

rather than proceeding to disposition. As such, petitioner asks this Court to vacate the dispositional order and "return the children to the custody of [p]etitioner" or, alternatively, remand for an adjudicatory hearing.

It is important to note that this Court has never recognized a claim of ineffective assistance of counsel in the context of abuse and neglect proceedings, and we decline to do so here. More importantly, petitioner provides no evidence for her unsupported claims that her counsel was ineffective. Rather than point to specific acts of her counsel that allegedly fell below an objective standard of reasonableness, petitioner generally argues that she complained about her attorney, that she was confused, and that she should have been given the opportunity to reopen her adjudication. Petitioner does not argue that her counsel wrongfully advised her as to the adjudicatory process, that he failed to meet with her, or that he failed to take any steps requested by petitioner. Such generalized claims of ineffective assistance without pinpointing specific deficient actions are without merit. As noted above, Rule 10(c)(7) of the Rules of Appellate Procedure requires that a brief "must contain appropriate and specific citations to the record on appeal" and permits the Court to "disregard errors that are not adequately supported by specific references to the record on appeal." As such, petitioner cannot be entitled to relief.

For the foregoing reasons, we find no error in the decision of the circuit court, and its February 11, 2022, order is hereby affirmed.

Affirmed.

**ISSUED**: August 31, 2022

**CONCURRED IN BY**:

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton
Justice C. Haley Bunn